Rutledge, Ch. J. and Judges Grimke and Bay,
thought the conviction was insufficient, because the bill, if real, would not have been valid, for want of the third com» missioner’s name, and could not, therefore, be the subject of an offence within the act The case of the King v. *286 Moffat, Leach, 368. was relied on, as also of the State v. Jones, (ante.)
Judges Burke and Waties were of a different opinion, and thought the conviction was right.
Burke, J.
The prisoner has been convicted of passing 3 counterfeit ten pound bill, knowing it to be forged., ¡kc. Ob the trial it appeared that the counterfeit bill bore so great a similitude to the genuine ten pound bills, that the prisoner was able to impose and pass it for a good one; and that good money, to the nominal amount of it, had been received in change for it, to the total loss of him on whom it was imv posed ; yet, notwithstanding its passing thus into circula* tion, it is urged, in bar of the conviction, that it bears the signature only of two of the commissioners, instead of three, and therefore is not a counterfeit of the real bills, which are, as the act of assembly directs, signed by the three commissioners. The counterfeiter, whoever he was, either from design or from inaccuracy, omitted to insert the name of the third commissioner ; and the question solely is, whether this omission be sufficient to vitiate the conviction. The exception is endeavoured to be supported on one ground,, .which is this 5 that if the bill offered in evidence had been genuine, yet, signed as it was, only by two commissioners, it would not therefore have been good, and, of course, not a subject of counterfeit ; and from hence it is inferred, that to ’ counterfeit such a bill is not an offence against the act. This reasoning, I must confess, my mind resorted to at first; but on hearing the case argued, and considering the subject since, the weakness of that argument appears evident to me. Jn the first place, it supposes what is not certain; that a ge« nuine bill, signed only by two commissioners, is beyond a possibility of being made a good one. But granting it. was a bad one, beyond remedy, I am yet of opinion that the counterfeit bearing ©n its face, as it did, such an obvious, likeness or similitude, and purporting the amount and de-summation of a real ten pound bill, as wop--calculated to ini ,. *287 «ose, and push it into circulation, I am of opinion that the prisoner thereby committed the offence which the act in* tended to prevent. And whether such bill, if genuine, were void or not, is immaterial. The plain reason of the case, and the nature and consequences flowing from the offence make this evident ; and the reasoning is well sup* ported upon .the weight and authority of Hawkswood’s case, Lee’s case, and Sterling's case, reported by Leach. Hawks* wood was convicted of forging a hill of exchange ; the bill was written on paper not stanift, which would have made it void had it been a genuine bill j yet the court were decided and unanimous that the conviction was right. Lee’s case was similar to this, and decided upon the same principles» A similar decision was made in Sterling’s case ; he was convicted of forging the will of a person who was then living. The writing, had it been genuine, would have been void ; for there could be no such instrument, in contempla* tion of law, as a last will and testament, until sifter the death of the testator ; but notwithstanding the invalidity of such a will, a conviction for the forgery of it was deemed good. It is true that the authority of Moffat1 s case appears to run against these decisions : he had forged a bill of exchange which, as the law stood, would not have been valid or negotiable, had the bill of exchange been real j the forgery of it was deemed not to be a capital offence. But to this there is opposed the weight of the three cases before mentioned ,; and what is of greater weight to my mind, th& plain reason of ills thing. In the present instance the prisoner’s offence consists, not in passing a counterfeit bill, to the likeness 'of one that might be good or bad, but, in passing a bill with such a reasonable likeness on the face of it, with such strong-features, resembling a real bill, as fitted it, and did answer the purpose of passing it for good money, and thus push it into circulation. Whether he who counterfeited the bill was ingenious and accurate or not, cannot, in my opinion, make in favour of him who passed the bill in this case» The fact is, that the bill passed hy the prisoner, had but too much the similitude of a real one, and he was but too sue* *288 cessful in imposing it as such upon a poor laborious citizen, who has sustained the loss which the act meant to prevent. I am o£ opinion that the omission of commissioner Unger’s signature, so far from rendering the counterfeit incomplete, that this very circumstance more effectually completed the deception. It made it look the more like one of the real bills, in which commissioner Unger’s name, having been written with pale red ink, is now, by handling and use, so obliterated as to be in some of the bills scarcely visible to the naked eye ; and this obliteration was not badly imitated by omitting the signature altogether. It condensed and strengthened the deception, and thus helped the counterfeit into circulation with success, and therefore removes all legal claim to such an interpretation as can subvert the prisoner’s tonviction. In giving this decision there is one circumstance-that .gives me pleasure, which is, that the opinion I give is not likely to affect the life of the prisoner. However, whether it did or not would not influence my judgment. The duty of my station obliges me to steer a course with the rights of the citizen on the one hand, and the authority of the laws on the other. '
Waties, J.
The crime which .the law describes, and which it intends to punish, is a counterfeiting of the paper medium. The question, then, is, whether the verdict of the jury is a good conviction of this crime ? It appears to me to be so, both from a reasonable and a literal construction of the act. In establishing the paper medium as a substitute for money, it was necessary to protect its credit and circulation. It was necessary, therefore, to provide for the safety ©f the bills, from the time of their issuing until they ceased to pass current; to guard them from counterfeits, not only in the original perfect form, but in the future altered and defaced state which use or accident might occasion j otherwise, the security proposed would be only temporary, and* after a short time, these bills would be exposed to all the mischief which the law intended to prevent. From the daily and hourly use of them, they would soon change their *289 appearance ; some would be torn, others in part obliterated, and most of them materially differ from the Mr state in which they first issued. All this has actually happened; and every one knows that many of these bills have now only ivjo of the commissioners’ names visible on them. But they, notwithstanding, pass current, are received in payment of taxes, and in all other payments, without the least scruple or distrust; for, although the signature of one of the commissioners, from some imperfection in the ink, is now wanting, yet it is known that they all once possessed it, and the want of it is no objection to their currency. If, then, they are current, they must be valid; and, if they are valid, a counterfeit of them in this state most be an offence within the act. I can therefore see no similitude between this case and the case of Moffat. In that, there was a forgery of a bill of exchange, which, if real, would have been voids in this, there is a counterfeiting of a bill of the paper medium, which, if a true one, would be valid. The reason in one case is essentially different from the reason in the other. A bill of exchange has only a temporary existence ; a new biff is made for every new occasion ; soon ceasing to circulate, because its purposes are soon answered ; it is not liable to suffer any change in its appearance, from frequent circulation, and if there should be any material defect in it, there would be no room to presume that it was occasioned by use, but the presumption would be, that it was an original defect; it would not, for this reason, be received in payment, and any counterfeit of it, in this state, would not, therefore, be a crime, because it would not be apt to impose. But the paper medium has a permanent existence, it serves the purposes of gold and silver, and it changes its appearance by use ; it is, nevertheless, still current, and will continue to be so until it is decried by law or by popular opinion. From a further view of it, its legal analogy to coin will appear more fully ; and if we compare the cases relative to the counterfeiting of coin with this case, it will be difficult to discriminate between them. It is objected that *290 tbe paper medium is tlie creature of a positive act; that the signature of three commissioners is essential to it; that therefore this form must be observed in a counterfeit. But coin is also the creature of lav/; for it is made legal here by a positive act, which legitimates various foreign coins, and in all of them a particular form or impression is also essentiaL In England the legitimation of coin is always by indenture, between the king and the master of the mint, which prescribes the weight, denomination, impression, &c. and without this the counterfeiting of it would be no crime. Hale, P. Co 196. A particular impression is essential to it. Id. And yet, in the case of the King v. Wilson, Leach, 322. a counterfeit shilling, -without the vestige of impression, was held a complete act of treason, within the statute of 23 Ed. III. for it had a reasonable likeness to the current coin. Why not allow the same construction to our act, which has also for its object the protection of a current money ? The mischief of the crime does not consist in 'making a critical copy of every part of a bill of the paper medium, for all this may be done without doing any injury, if the resemblance to the true bill is not sufficient to deceive, but the mischief consists, as in the case of coin, in making such a likeness to it as v/ill be apt to impose and pass current. This is the kind of counterfeit which tends to cheat the public, and weaken commercial faith ; and this must have been the kind which the law contemplated, or the penal clause would now he impotent ; for the only counterfeits that will be probably attempted in future, will be such as bear a similitude to the worn and altered state of these bills, (which is the present state of most of them,) because the semblance of long use will be apt to gain greater confidence, and, of course, be less liable to detection. As such counterfeits are the most dangerous, it may be fairly presumed that the legislature had them chiefly in view, and that as the true bills would, in the course of constant circulation, unavoidably suffer some change, the law was intended to protect them in every state of their current existence. They are, without doubt, the lega), bilk of the paper medium, however changed and de *291 faced they may be, as long as they are current; like English shillings, which are the legal coin while they pass, although they have lost their impression.. It appears to me, then, to follow necessarily, that a counterfeit of a bill in this state which, if i"eal, would be a current one, is a complete offence within the law, and therefore I think the conviction right.